Missouri Pacific Transportation Company *v.* Schmitz.

4-5395                                      125 S. W. 2d 448

Opinion delivered February 27, 1939.

*T. B. Pryor* and *Daggett & Daggett,* for appellant.
*A. M. Coates,* for appellee.

Humphreys, J.   This is a suit by appellee, a passenger, against appellant, a common carrier, to recover damages sustained by him by reason of appellant's failure to carry him safely to his destination.

Appellant defended upon the ground that, although it failed to safely carry appellee to his destination, he, the passenger, failed to exercise ordinary care to prevent the alleged injury and damage which he suffered.

The cause was submitted to a jury upon the complaint, answer and testimony introduced by the respective parties which resulted in a verdict and judgment against appellant for $100.16, from which is this appeal.

The testimony introduced by the respective parties contains little or no dispute.   The record, in substance,

reflects that appellee resided at Keeville, Ark., and decided to make a visit to his daughter who resided near La Grange Junction, Ark., located about nine miles south of Marianna. On the morning of September 25, 1937, he took the Greyhound bus from Keeville to Brinkley where he purchased a ticket costing $1.06 from appellant's agent over the Central Arkansas Bus Line to Marianna and over the bus line of appellant from Marianna to La Grange Junction. Under the schedule of the busses of the carriers appellee was to change busses at Oursler's Filling Station in Marianna which was also a bus station. He alighted from the bus upon which he arrived and waited about thirty minutes for the arrival of appellant's bus from Memphis to Helena which he was to take in order to go by La Grange Junction, which was between Marianna and Helena. The bus he was to take arrived from Memphis on or about schedule time and stopped at the bus station where he was waiting and he presented his ticket to the bus driver who refused to allow him to enter the bus saying that he was not going by La Grange Junction, but had been routed around by Moro and other towns to Helena.

According to appellee's testimony and the testimony of a disinterested witness by the name of W. T. Gwinn, the bus driver made no further explanation and made no suggestion to appellee as to any other mode of transportation from Marianna to La Grange Junction. It was then in the neighborhood of one o'clock p. m. and without making any inquiry as to other available transportation to his destination from anyone else or from any other agent of appellant he concluded to walk the rest of the way, a distance of nine miles and did so carrying his valise and a bundle or package which weighed about fifty pounds. The road from Marianna to La Grange Junction was constructed out of gravel part of which was covered with blacktop. Appellee had no acquaintances in Marianna. It was a chilly day and a drizzling rain was falling. Appellee was a day laborer about sixty-two or three years of age. He had suffered a little with rheumatism. He had recently been engaged in pick-

ing cotton at fifty cents a hundred and generally picked two-hundred and fifty pounds a day. After buying his ticket at Brinkley he had only three or four dollars left in his pocket. He arrived at his destination late in the afternoon, almost sundown, in a fatigued condition and was unable to walk or do anything for about three weeks, was just up and down in bed during that time, and was cured by the use of home remedies, but had to spend about $3 for medicine during the time he was unable to work. He testified that the walk with the heavy load he had to carry brought about a recurrence of his rheumatism and his suffering and illness for about three weeks.

The bus driver testified that he told appellee that on account of rain the night before he was routed by Moro and would not go to La Grange Junction. He also testified that on the 24th the bus went by La Grange Junction and that sometimes he went that way and sometimes the other way on account of repairs being made on the road through or by La Grange Junction.

W. C. Oursler, Jr. testified that sometimes the agent at Memphis notified him not to sell tickets to La Grange Junction when the bus was routed around by Moro, but that he did not know what instructions were given to the agent at Brinkley about selling or not selling tickets to or through places to or through which the bus did not run. Oursler also testified that sometimes when the bus was detoured around by Moro he would send passengers over to La Grange Junction who had purchased tickets to that point by private car and that had appellee seen him or made such a request he would have gotten a man who worked for him individually to take appellee over to La Grange Junction as he went home that way about five o'clock in the afternoon and there would have been no extra charge to appellee for that service.

There is no serious contention made that appellant was without fault in selling appellee a ticket over its bus line to a point where it did not stop. This was negligence on its part rendering it responsible for any damages to the passengers which might result from such negligence or wrongful conduct. The bus driver was told by the

routing agent at Memphis early the morning of the 25th that he must go around by Moro instead of by or through La Grange Junction and there was ample opportunity for the routing agent in Memphis to notify the agent at Brinkley not to sell any passenger a ticket who was going to La Grange Junction. We also think, after selling such a ticket, it was the duty of appellant to have made some provision to take care of passengers and transport them from Marianna to La Grange Junction. In the instant case there was no effort made to take care of passengers who had bought tickets to La Grange Junction, but such passengers were simply notified that the bus was not going to La Grange Junction that day leaving the passenger or passengers to get to his or their destination as best he or they could without aiding him or them. We think this was clearly negligent conduct on the part of appellant equal to that of selling a ticket to a point at which the bus would not stop.

The contention of appellant is, however, that appellee should not recover for the injuries he sustained because it was his duty in the exercise of ordinary prudence under the circumstances not to undertake to walk from Marianna to La Grange Junction and that such injuries that he suffered were the direct result of his own negligent act.

Appellant is asking this court to say as a matter of law that appellee should not have undertaken the journey on foot. We are not willing to say this as a matter of law because the jury could have reasonably found from the evidence that appellee was used to outdoor life and in the exercise of ordinary prudence might have undertaken the trip without certain harm or injury to himself. The road was not a difficult one to walk over being partly blacktop and partly gravel and the testimony as to the inclemency of the weather is that it was drizzling rain and a little chilly. Appellee was a laboring man and able to pick two-hundred and fiifty pounds of cotton a day. Just before taking the trip he had been picking cotton at fifty cents a hundred and picked on an average of two-hundred and fifty pounds a day. In view of his

ability to do hard labor and the desire on his part to save the few dollars he had in his pocket, we cannot and are not willing to say as a matter of law that appellee was negligent in undertaking to walk a distance of nine miles over a good road to his destination. We do not think any duty rested upon him after he had been refused admittance to the bus on which he had a right to ride to his destination under the provisions of his ticket to go out and hunt up private transportation if he felt able to walk the distance. The little rheumatism he had had prior to that time did not interfere with the performance of labor on his part, so the fact that he had a touch of rheumatism occasionally could not be taken as proof conclusive that he should not have undertaken the journey on foot. Of course, if we could say as a matter of law it was folly pure and simple on the part of appellee to take the journey on foot, then it would necessarily follow that his own acts of negligence were the direct cause of his injuries. We think the jury may have reasonably found that appellee acted as an ordinarily prudent person would have acted under the circumstances. Had he been decrepit or an invalid the undertaking would have been the undertaking of an imprudent person, but appellee was neither an invalid or a decrepit person. On the contrary he was in good health and an able-bodied man, and we do not think he must have foreseen as a prudent man that such a trip would necessarily put him to bed and injure his health.

There is no contention that the injuries he sustained did not entitle him to the modest judgment of $100.16.

No error appearing, the judgment is affirmed.